## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

THE ESTATE OF JENNIFER
TIERNEY, et al.,
      Plaintiffs

      vs

DAVID SHELLBERG,
      Defendant

Case No. 1:08-cv-866

Weber, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**[1]

      This civil action is before the Court on the parties' cross-motions for summary judgment. Defendant, proceeding pro se, filed his summary judgment motion on March 8, 2010 (Doc. 44). Plaintiffs filed a memorandum in opposition (Doc. 74) and defendant filed a reply (Doc. 78). Plaintiffs filed their motion for summary judgment on April 7, 2010 (Doc. 77). Defendant opposes the motion (Doc. 82) and plaintiffs have filed a reply (Doc. 85). For the reasons stated below, this Court recommends that defendant's motion for summary judgment be granted and plaintiffs' motion for summary judgment be denied.

### I. Introduction

      This case arises from the untimely death of plaintiffs' adopted daughter, Jennifer Tierney ("decedent"), which plaintiffs allege was caused by the defendant's wrongful conduct. Plaintiffs, William and Patricia Tierney, claim that defendant, David Shellberg, delivered narcotics to their daughter and that, as a result, their daughter died from a drug overdose. Plaintiffs filed a complaint alleging claims of intentional infliction of emotional distress, wrongful death based on defendant's negligence pursuant to Ohio Revised Code § 2125.01, and

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

survival of action pursuant to Ohio Revised Code § 2305.21.[2] This Court has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332 as plaintiffs are Ohio citizens, defendant is a citizen of Indiana, and the amount in controversy exceeds $75,000.00. (Doc. 1).

## II. Findings of Fact

In order to provide a cogent framework, the facts are presented as follows:

A.     Undisputed Facts

The defendant met the decedent while they were both employees of the company "Friendly Strippers." (Docs. 44, 74). After meeting, the defendant and decedent began a romantic relationship and had a child together. *Id.* In 2004, the defendant and decedent ended their romantic relationship. *Id.* The decedent was pronounced dead on December 17, 2006; the cause of decedent's death is noted as methadone and cocaine intoxication. *Id.*

B.     Defendant's Facts

Defendant testified that during the course of their romantic relationship, the defendant and decedent used drugs together. (Doc. 43, p. 20, Deposition of David Shellberg). Defendant further attested that after the birth of their daughter in 2001, he quit using drugs while the decedent continued. *Id.* The defendant and decedent did not maintain a sexual relationship. (Doc. 45, p. 14, Deposition of David Shellberg Part 2). The defendant also testified he did not deliver any drugs to the decedent in Ohio prior to her death. (Doc. 43, p. 20). Defendant presents evidence that on the evening of December 16, 2006, the night of the decedent's death, he was at home with his family in Noblesville, Indiana Christmas caroling. *Id.* at p. 16. (*See*

---

[2] Plaintiffs' complaint also included a claim for loss of companionship on behalf of decedent's daughter, L.S. However, plaintiffs subsequently sought and were granted dismissal of L.S. as a party. (Docs. 90, 98). Therefore, to the extent plaintiffs allege any claims on behalf of L.S., who is no longer a party, such claims should be dismissed.

*also* Doc. 45, pp. 7-11; Doc. 44, Ex. 1, p. 1, Affidavit of Marjorie Shellberg; Doc. 44, Ex. 1, p. 3, Affidavit of Laura Shellberg).

Plaintiffs challenge the affidavits of defendant's wife and mother. Plaintiffs assert there are inconsistencies between the defendant's and the witnesses' statements regarding the defendant's alibi on the night of December 16, 2006. (Doc. 77, pp. 10-12). The defendant testified that on December 16, 2006, he and his family went Christmas caroling between 8:00 p.m. and 9:00 p.m. (Doc. 45, p. 27). His mother, Marge Shellberg, stated in her affidavit that the caroling occurred after 9:45 p.m. (Doc. 44, Ex. 1, p. 1). Defendant's wife, Laura Shellberg testified in her deposition that the caroling occurred at 7:00 p.m., but no later than 9:00 p.m. (Doc. 51, pp. 17-18, Deposition of Laura Shellberg). In a later affidavit, Laura Shellberg attested that the caroling occurred at approximately 10:00 p.m. (Doc. 44, Ex. 1, p. 3). Plaintiffs argue that these timing inconsistencies, specifically the inconsistency between Laura Shellberg's deposition testimony and subsequent affidavit, are evidence that defendant was lying to conceal that he was in Ohio with the decedent. (Doc. 77, p. 12).

It is accepted "that a party may not create a genuine issue of material fact by contradicting deposition testimony with a more recent affidavit." *U.S. v. Atlas Lederer Co.*, 97 F. Supp.2d 834, 838 (S.D. Ohio 2000) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1984)). "[W]hen deciding the admissibility of a post-deposition affidavit at the summary-judgment stage, the district court must first determine whether the affidavit 'directly contradicts' prior sworn testimony." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 593 (6th Cir. 2009) (reversing district court's decision to strike portions of an affidavit where the only inconsistency between deposition testimony and subsequent affidavit was timing of events).

In the present case, the statements, though inconsistent as to the timing of events, are not contradictory as to the material fact of whether defendant was present in Noblesville, Indiana on the night of December 16, 2006. Rather, the inconsistencies are simply whether the caroling occurred as early as 7:00 p.m. or as late as 10:00 p.m. on December 16, 2006. There is no inconsistency or contradiction contained in the defendant's evidence regarding the material fact that on the evening of December 16, 2006, the defendant was not in Ohio, but in Indiana. Consequently, it is appropriate for the Court to consider the statements contained in the affidavits, despite the inconsistencies, because there is no direct contradiction as to the material fact. *See Id.*

Plaintiffs further seek to invalidate the affidavit of Marjorie Shellberg by introducing evidence that the computer in defendant's residence identified that she was using the internet on the evening of December 16, 2006 at 6:36 p.m., and was not at work as she stated in her affidavit. (Doc. 77, p. 11). In support of this assertion, plaintiffs cite to the affidavit of Investigator Nordstrom which states that "[e]ntry 52118 evidences that a person was logged onto the [defendant's] computer and was on the internet using the path/user name of Marge, on December 16, 2006 at 6:36 p.m." (Doc. 77, Ex. A, p. 2). This is not evidence establishing a contradiction in Marjorie Shellberg's affidavit, but simply evidence that the path/user name "Marge" was being used by someone on the computer at 6:36 p.m. Accordingly, the Court finds no reason to strike any portion of Marjorie Shellberg's affidavit.

C.    Plaintiffs' Facts

The pertinent facts and evidence in support of plaintiffs' claims are as follows: On December 10, 2006, William and Patricia Tierney, the decedent's adoptive parents, witnessed the defendant interact with the decedent during a routine custody exchange in Indiana. (Doc. 77, Ex.

4

D, Affidavit of William Tierney; Ex. E, Affidavit of Patricia Tierney). During this exchange, both William and Patricia witnessed the defendant rub the decedent's side. *Id.* Further, from December 14 to 16, 2006, several phone calls occurred between defendant and the decedent. (Doc. 77, Ex. F, defendant's cell phone records). Ronald Lunkenheimer, the decedent's biological father, visited the decedent's apartment on December 17, 2006. (Doc. 77, Ex. H, Affidavit of Ronald Lunkenheimer). Upon entering the apartment, Ronald Lunkenheimer discovered the decedent's body lying on the ground, unresponsive. *Id.*

The plaintiffs' factual recitation is limited due to this Court's inability to consider hearsay[3] evidence at the summary judgment stage. *See Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). *See also* Fed. R. Evid. 802. Plaintiffs have submitted the Affidavit of Orrin Nordstrom, a private investigator, who purportedly interviewed defendant's neighbors about defendant's claim that he and his family went Christmas caroling at their homes on the night of December 16, 2006. (Doc. 77, Ex. C). The Nordstrom Affidavit states that defendant's neighbors "advised" the investigator that defendant and his family did not Christmas carol at their houses on the night of December 16, 2006. Defendant objects to Mr. Nordstrom's affidavit on the basis of hearsay.

An affidavit filed in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Here, Mr. Nordstrom's affidavit contains statements allegedly made by

---

[3] Hearsay is defined under the Rules as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

defendant's neighbors.[4] The declarations made by Mr. Nordstrom are offered by plaintiffs for the truth of the matters asserted in support of their claims and in opposition to defendant's alibi defense. However, Mr. Nordstrom's affidavit is not based on personal knowledge, but rather on hearsay—what the neighbors allegedly told Mr. Nordstrom about defendant's whereabouts on December 16, 2006. Plaintiffs may not use hearsay or other inadmissible evidence to create a genuine issue of fact on summary judgment. *See Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (affidavit insufficient to create genuine issue of fact where it was not based on personal knowledge); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) (Rule 56(e) affidavit improper where it was not made on personal knowledge and did not set forth facts that would be admissible into evidence).

The Nordstrom Affidavit also includes information obtained from Mr. Nordstrom's interviews with Nikki Perkins (that the decedent told her the defendant came to the decedent's apartment in the fall of 2006 for sexual relations), Carol Marschall and Pat Krot (that the defendant came to the office of the decedent's apartment complex in the summer of 2006 to complain about the conditions of the decedent's apartment), Gail Flanagan (that the defendant solicited her to have sex on December 8, 2006), and Jason Boughner (that he and the defendant traveled by automobile to Ohio in the summer of 2005 to perform work for the defendant's brother). The statements allegedly made by these declarants are offered to contradict the defendant's denial of a continued sexual relationship with the decedent and the defendant's assertion that he did not drive to Ohio because his driving privileges had been suspended. The statements contained in the Nordstrom Affidavit concern information about which Mr. Nordstrom has no personal knowledge and are also out-of-court statements offered for the truth

---

[4] These include interviews with neighbors Carmen Torres, Alicia Jones, and Amanda Smith. (Doc. 77, Ex. C).

6

of the matters asserted. Thus, they are barred from consideration by this Court unless an exception to the hearsay rule applies. Plaintiffs have failed to assert that such statements are admissible under any exception to the hearsay bar. Therefore, the Court may not consider the statements contained in the Nordstrom Affidavit for purposes of the motions for summary judgment.

Plaintiffs also provide the following evidence in support of their assertion that defendant was in Ohio with the decedent at the time of her death: (1) on December 10, 2006, the decedent told William Tierney that the defendant was coming to see her on December 16, 2006 (Doc. 73, Affidavit of William Tierney); (2) on December 10, 2006, the decedent told Patricia Tierney that the defendant was coming to see her on December 16, 2006 (Doc. 72, Affidavit of Patricia Tierney); (3) the decedent told her friend, Heather Needs, that the defendant was coming to see her on December 16, 2006 (Doc. 77, Ex. I, Affidavit of Heather Needs); (4) on December 16, 2006, the decedent told Ronald Lunkenheimer that the defendant was coming to see her that evening (Doc. 77, Ex. J, Affidavit of Ronald Lunkenheimer); and (5) on December 16, 2006, Ronald Lunkenheimer told his girlfriend, Kris Riley, that the decedent had told him that the defendant was coming to see the decedent on December 16, 2006. (Doc. 77, Ex. D, Affidavit of Kris Riley). Plaintiffs additionally provide the following excerpt from the decedent's diary dated December 14, 2006: "at 6:36 p.m. Dave called me on his cell and asked me what I was doing. He was whispering and obviously didn't want no one hearing what he was saying. He told me that he was hoping to have fun with me this weekend just me and him." (Doc. 77, p. 13). Each statement attributable to the decedent—a declarant who is no longer available—is inarguably hearsay. The plaintiffs do not claim that these statements are not hearsay, nor have they provided any legal authority that any of these statements by the decedent are subject to an

7

exception to the hearsay rule that would allow a jury to consider any of this evidence at trial.[5]  As this is inadmissible hearsay, the Court may not consider any of the above evidence in resolving the motions for summary judgment.

In addition, plaintiffs' briefs in support of their motion for summary judgment and in opposition to defendant's motion are replete with facts irrelevant to their causes of action. Plaintiffs' inclusion of defendant's supposed knowledge of drugs and their respective uses, as well as his choice in reading material and music, does little but distract the Court from the relevant facts.[6]  (Doc. 77, pp. 6-9).

### III. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[5] None of the decedent's statements were sufficiently contemporaneous with any known observation by the decedent to meet the requirements of the present sense impression exception of Rule 803(1), Fed. R. Evid.  In addition, the decedent's statements do not qualify as "former testimony" subject to direct or cross-examination by the defendant for admissibility under Rule 804(b)(1).  They are not admissions of a party-opponent offered *against* the decedent. *See* Fed. R. Evid. 801(d)(2).  Nor can they be considered statements made against the unavailable declarant's interests under Rule 804(b)(3). *See McClung v. Wal-Mart Stores, Inc.,* 270 F.3d 1007, 1014-15 (6th Cir. 2001) (admission of non-self-inculpatory statements, even if made within a broader narrative that is generally self-inculpatory, are inadmissible).  Finally, none of the decedent's alleged statements have sufficient indicia of reliability to meet the requirements of the residual hearsay exception of Rule 807. *See Ritchie v. Stamler Corp.,* 205 F.3d 1341, 2000 WL 84461 (6th Cir. 2000) (unpublished) ("Before Rule 807 can be utilized, the proponent of the hearsay evidence must provide the Court with indicia of trustworthiness similar to that found in other hearsay exceptions.").

[6] For example, plaintiffs reference a *haunting* document found on defendant's computer which upon review appears to be nothing more than an oft-cited riddle. (Doc. 77, p. 6). *See* Jeffery Deaver, The Cold Moon: A Lincoln Rhyme Novel 2 (Simon &Schuster, Inc. ed., 2007), *available at* http://www.jefferydeaver.com/Novels_/ColdMoon/ColdMo

8

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield,* 295 F.3d at 615; *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Resolution

Both defendant and plaintiffs have moved for summary judgment on all claims. Defendant argues that summary judgment is appropriate in this matter as the plaintiffs have failed to present any admissible evidence either establishing their claims or refuting defendant's assertion that he was in Indiana on the night of the decedent's death, December 16, 2006. (Doc.

onExcerpt/coldmoonexcerpt.html.

44).  Defendant contends that in the absence of any admissible evidence refuting his claim that he was in Indiana with his family on December 16, 2006, the night plaintiffs claim he delivered the deadly dose of narcotics to the decedent, there is no genuine issue of material fact for a jury to resolve.

Plaintiffs, in opposition to defendant's motion, submit hearsay evidence that the decedent told others that defendant *was going to* visit her on December 16, 2006.  (Doc. 74).  However, plaintiffs do not present any admissible evidence to rebut defendant's evidence that he was in Indiana during all times relevant to this action.  Likewise, in connection with their motion for summary judgment, plaintiffs argue that defendant drove to Ohio on December 16, 2006 and provided illegal drugs to the decedent which caused her death.  (Doc. 77).  However, plaintiffs do not present any admissible direct or circumstantial evidence establishing defendant's whereabouts on the night of December 16, 2006.  Moreover, in response to defendant's hearsay objections, plaintiffs fail to cite any legal authority establishing the admissibility of their evidence and merely opt to continue proffering evidence which is inadmissible—either because it is hearsay, *e.g.*, the statements made by defendant's neighbors contained in investigator Orrin Nordstrom's affidavit (Doc. 77, Ex. C), or irrelevant to their claims, *i.e.*, the frequency of defendant's contact with ex-girlfriend Amanda Sizemore.  (Doc. 85, p 6-7).

For the reasons set forth below, defendant is entitled to summary judgment under Rule 56(e) as plaintiffs have failed to properly support their assertions of fact.  Defendant is further entitled to summary judgment under Rule 56(a) as plaintiffs have not presented facts sufficient to establish their claims for wrongful death, intentional infliction of emotional distress, or a survival action under Ohio Rev. Code § 2305.21.

10

A.    <u>Wrongful Death Claim</u>

"To maintain a wrongful death action on a theory of negligence, plaintiffs must show

three elements: a duty owed to plaintiffs' decedent, a breach of that duty, and proximate

causation between the breach of duty and the death." *Samonas v. St. Elizabeth Health Ctr.*, No.

05 MA 83, 2006 WL 338366, at \*4 (Ohio App. February 6, 2006) (citing *Littleton v. Good*

*Samaritan Hosp. & Health Ctr.*, 529 N.E.2d 449 (Ohio 1988)).  "Under Ohio law, the existence

of a duty depends on the injury's foreseeability.  The test for foreseeability is whether a

reasonably prudent person would have anticipated that an injury was likely to result from the

performance or nonperformance of an act." *Thomas v. Parma*, 624 N.E.2d 337, 339-40 (Ohio

App. 1993) (internal citations omitted).  Lastly, "to warrant a finding that negligence is the

proximate cause of an injury, it must appear that the injury was the natural and probable

consequence of the negligence alleged, the general rule being that a defendant is not answerable

for anything beyond the natural, ordinary, and reasonable consequences of his conduct."

*Chaney v. Eason*, No. 72142, 1997 WL 793128, at \*2-3 (Ohio App. 1997).  "[W]here injury

results through the intervention of other forces which themselves are wrongful, the injury

resulting therefrom cannot be said to be the natural or probable consequences of the original act.

The causal connection between the original act of negligence and the injury is broken." *Id.*

(citing *Farlow v. Bd. of Cnty. Comm'rs of Lorain Cnty.*, Nos. 2812, 2813, 1979 WL 207611, at

\*4 (Ohio App. 1979)).

In the instant case, plaintiffs have not established that: (1) defendant had a duty to the

decedent, (2) that defendant breached that duty, or (3) that the breach of the duty was the

proximate cause of the decedent's death.  While it is certainly a crime to transport and/or deliver

11

illicit drugs[7], plaintiffs have not presented any authority showing that defendant had a duty to the decedent to *not* deliver her drugs.  Following the standard enunciated in *Thomas*, the issue is whether a reasonably prudent person would have anticipated that delivering narcotics to the decedent was likely to result in her injury; if yes, then defendant owed the decedent a duty to not deliver the drugs.[8]  Neither party has provided the Court with any legal precedent establishing a duty in such situations, nor has the Court's research resulted in any cases supporting such a finding.[9]

Assuming, *arguendo*, that defendant had a duty to not provide narcotics to the decedent, plaintiffs have not established a wrongful death claim because they have not presented any evidence that defendant breached said duty.  The crucial facts for purposes of plaintiffs' wrongful death claim are that the defendant was present in Ohio on December 16, 2006, and delivered drugs to the decedent.  Defendant maintains he was in Indiana with his family on the night in question and has provided supporting admissible evidence in the form of affidavits and deposition testimony.  On the other hand, plaintiffs have failed to present any admissible direct or circumstantial evidence that the defendant was in Ohio on December 16.  Instead, plaintiffs have provided a vast array of hearsay (and hearsay within hearsay) evidence in the form of deposition testimony and affidavits that the decedent told people the defendant *was going to* visit her and bring her drugs.  Further, plaintiffs have provided ample evidence of the contents of defendant's computer despite the lack of relevance it has on defendant's whereabouts on the date

---

[7] *See* Ohio Rev. Code § 2925.03.

[8] Plaintiffs have never maintained that the defendant forcefully intoxicated the decedent but, rather, that he negligently caused her death by merely providing the drugs to her on December 16, 2006. (Doc. 1).

[9] Notably, several states have enacted legislation specifically aimed at creating civil remedies for individuals injured by illegal drug use. For example, Illinois has enacted a "Drug Dealer Liability Act." *See* 740 Ill. Comp. Stat. 57/1-

at issue. As plaintiffs have failed to present any admissible evidence creating a genuine issue of fact as to whether defendant was in Indiana on the night of December 16, 2006 or delivered drugs to the decedent in Ohio, plaintiffs have failed to establish a *prima facie* element of their wrongful death claim and defendant is entitled to summary judgment.

Even if plaintiffs' "evidence" could be construed as raising genuine issues of fact as to whether and at what time the defendant was with his family in Indiana on December 16, 2006, they nevertheless fail to present admissible evidence showing defendant was in Ohio on December 16, 2006 and gave the decedent drugs. Plaintiffs' burden at the summary judgment stage is to provide affirmative evidence supporting the essential elements of their claims. Plaintiffs have failed to meet their burden on summary judgment to present admissible evidence from which a reasonable jury could infer defendant's presence in Ohio on December 16, 2006 and delivery of drugs to the decedent. Therefore, whether or not plaintiffs have shown an issue of fact regarding defendant's presence *in Indiana*, they have not shown defendant was physically present *in Ohio* for purposes of their motion for summary judgment.

In any event, even if plaintiffs were able to establish the first two elements of their wrongful death claim - that defendant had the requisite duty and that he breached this duty by delivering drugs to the decedent - plaintiffs' claim would nevertheless fail because they cannot establish that the mere act of delivering the drugs to the decedent was the proximate cause of her death. As previously noted, plaintiffs have alleged the defendant caused the death of the decedent through *negligence*; there is no claim that defendant forced or coerced the decedent to take drugs. Plaintiffs' own evidence indicates that the decedent had willingly taken drugs provided by the defendant on two previous occasions, even when the decedent knew that taking

---

25 (1997). Ohio is not one such state.

these drugs might make her violently ill.  (Doc. 77, Exs. B, H).  There is no evidence showing

the decedent did not take the drugs of her own volition or did so without the knowledge that the

drugs were likely to cause her bodily injury.  The decedent's informed and voluntary decision to

take the drugs is an intervening act such that the causal connection between defendant's assumed

negligent delivery of the drugs and the decedent's death is broken.  *Chaney*, 1997 WL 793128,

at *2 -3.  Thus, plaintiffs are unable to establish a third *prima facie* element of their wrongful

death claim and defendant is entitled to summary judgment.

        B.     <u>Intentional Infliction of Emotional Distress</u>

       Plaintiffs' complaint also alleges a claim for intentional infliction of emotional distress.

To recover on an action for intentional infliction of emotional distress ("IIED"), plaintiffs must

prove the following four elements:  (1) defendant either intended to cause the plaintiffs

emotional distress or should have known that his actions would result in serious emotional

distress; (2) that the defendant's conduct was so extreme and outrageous as to go "beyond all

possible bounds of decency" and is considered "utterly intolerable in a civilized community;" (3)

that the defendant's actions were the proximate cause of plaintiffs' psychic injury; and (4) that

the plaintiffs' mental anguish is serious and of a nature that "no reasonable man could be

expected to endure it."  *Brown v. Columbus Bd. Of Educ.*, 638 F. Supp.2d 856, 868 (S.D. Ohio

2009) (internal citations omitted).  Plaintiffs "may prove severe and debilitating emotional injury

through the testimony of an expert or lay witnesses acquainted with the plaintiff who have

observed significant changes in the emotional or habitual makeup of the plaintiff.  A self-serving

affidavit, however, is insufficient[.]"  *Burks v. Torbert*, No. 91059, 2009 WL 280405, at *4

(Ohio App. 2009).

       The plaintiffs have failed to present any evidence demonstrating the elements of a prima

facie case of IIED.  The record is devoid of any evidence substantiating their claim that they have suffered serious mental anguish or emotional distress.   Further, as discussed above, there is no admissible evidence that defendant engaged in any act of extreme conduct essential to an IIED claim.  Accordingly, defendant is entitled to summary judgment as no reasonable jury could return a verdict for plaintiffs on their claim for IIED.

      C.      Survival Action Under Ohio Rev. Code § 2305.21

Plaintiffs' final claim is a Survival Action claim pursuant to Ohio Rev. Code § 2305.21.  Section 2305.21 provides that "[i]n addition to the causes of action which survive at common law, causes of action for . . . injuries to the person or property . . . also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto."  Under § 2305.21, "an administrator or executor may maintain an action in the same manner in which decedent could have maintained such action if she had survived."  *Shinaver v. Szymanski*, 471 N.E.2d 477, 482 (Ohio 1984).

Plaintiffs claim that defendant breached the duty of care "owed to the [d]ecedent to not provide illegal and dangerous drugs in an effort to cause pain, suffering and death to the [d]ecedent." (Doc. 1).  To establish this claim, "there must be some evidence of *conscious* pain and suffering by [the decedent] between the injury inflicted and [her] resulting death." *Monnin v. Fifth Third Bank of Miami Valley, N.A.,* 658 N.E.2d 1140, 1149 (Ohio App. 2 Dist. 1995) (emphasis added) (and cases cited therein).  Here, plaintiffs fail to produce any evidence whatsoever showing that the decedent experienced conscious pain and suffering as a result of her death by a drug overdose.  Moreover, as discussed above, plaintiffs did not provide admissible evidence substantiating their claim that defendant delivered the drugs that caused the decedent's death. Plaintiffs have failed to meet their burden in establishing this claim.  Consequently,

defendant's motion for summary judgment should be granted on plaintiffs' survival of action claim.

**V. Conclusion**

For these reasons, the Court hereby **RECOMMENDS** that defendant's motion for summary judgment (Doc. 44) be **GRANTED**, that plaintiffs' motion for summary judgment be **DENIED**, and that this matter be **DISMISSED** on the docket of the Court.

Date: 3/7/2011

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

THE ESTATE OF JENNIFER                                   Case No. 1:08-cv-866
TIERNEY, et al.,
           Plaintiffs                                              Weber, J.
                                                                   Litkovitz, M.J.

           vs

DAVID SHELLBERG,
           Defendant

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

17

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee<br>B. Received by ( Printed Name)    C. Date of Delivery |
| 1. Article Addressed to:<br><br>David Shellberg<br>11369 Pegasus Dr.<br>Noblesville, IN 46060 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br><br>3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? *(Extra Fee)*   ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)* | 7002 3150 0000 8389 1122 |

PS Form 3811, August 2001     Domestic Return Receipt     102595-02-M-1540

1:08cv 866    (Doc. 99