## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**THE ESTATE OF JENNIFER
TIERNEY, et al.,**

**Plaintiffs**

**v.**                                       **Case No. 1:08-cv-866-HJW**

**DAVID SHELLBERG,**

**Defendant**

## ORDER

This matter is before the Court upon the parties' cross-motions for summary judgment (doc. nos. 44, 77). The Magistrate Judge entered a Report and Recommendation (doc. no. 99) recommending that defendant's motion be granted and that plaintiffs' motion be denied.  Plaintiffs timely filed objections (doc. no. 102), and defendant responded (doc. no. 103).  Upon *de novo* review, and having carefully considered the record, including the pleadings, briefs, exhibits, and objections, the Court finds the Report and Recommendation to be thorough and well-reasoned.  The Court agrees with the Magistrate Judge's recommendations, and therefore, will <u>grant</u> the defendant's motion and <u>deny</u> the plaintiffs' motion for the following reasons:

## I.  Factual Allegations and Procedural History

The Magistrate Judge has carefully set forth the facts underlying the death of Jennifer Tierney (doc. no. 99 at 2-8). Those facts are incorporated herein and summarized as succinctly as possible.  David Shellberg and Jennifer Tierney (the adopted daughter of plaintiffs William and Patricia Tierney) met in late 1999 when she was hired as a dancer and escort for "The Friendly Stripper" in Ohio (doc. no.

77-5 at 18).  At that time, Jennifer's husband was in prison, and she was living with her biological father Ronald Lunkenheimer and his girlfriend Kris Riley.  Beginning in early 2000, David and Jennifer engaged in a romantic relationship, moved in together, and had a child ("L.S.") out of wedlock in 2001.  Plaintiffs assert that "during the course of the relationship . . . . there was an ongoing course of intense and severe drug use which included but was not limited to: benzodiazepines, methadone, opiates, cannabis, cocaine, and . . . 'ecstacy' " (doc. no. 1 at ¶ 11).  David Shellberg acknowledges that he and Jennifer had used illegal drugs together, but indicates that sometime after the birth of their daughter, he quit using drugs while Jennifer continued her drug habit.  They broke up in early 2004.[1]  David Shellberg did not see his daughter for three months because Jennifer left without informing him of her new address.

Defendant, who was working at a new job in Indiana, subsequently married a woman with three children.  In 2006, defendant resided with his new family in Noblesville, Indiana, while Jennifer resided in Cincinnati, Ohio, approximately 100 miles away (doc. nos. 77-11;  78-1 at 1-6).  Meanwhile, David and Jennifer went to court over their daughter in a paternity and custody action. On January 4, 2006, after considering various psychological evaluations and holding a hearing, the Wayne County Superior Court in Indiana granted David Shellberg full custody of his

---

[1] Plaintiffs acknowledge in their brief that this relationship ended in 2004 (doc. no. 74 at 3), but allege in their complaint that David and Jennifer "maintained a sexual relationship up and until the time of [Jennifer's] death" in 2006 (doc. no. 1 at ¶ 13).

daughter "L.S." as of January 13, 2006, while Jennifer was granted "access and visitation rights."  The Court's Order noted that at the hearing on November 16, 2005, Jennifer had been "unable to remain alert and awake in the courtroom due to an apparent over medication of herself with Xanax" and that her drug screen on that date also showed a "significant presence of marijuana" (doc. no. 44-1 at ¶ 13).  The Court noted that Jennifer had recently been caught shoplifting and been cited for failure to have proper child restraints in her vehicle, and also had past convictions for domestic battery and possession of a pound of marijuana (at ¶ 12).

On December 17, 2006, Ronald Lunkenheimer went to Jennifer's apartment at approximately 10:30 a.m. According to his affidavit, he went inside via an unlocked sliding glass door and found Jennifer lying "unresponsive" on the floor (doc. no. 77-10).  He indicates he yelled to his girlfriend to get help.  The EMS report indicates that at hour 1345 (1:45 p.m.), "a female came running up and screaming for help" to a EMS unit that was nearby (doc. no. 77-11).  His affidavit does not explain the time gap between 10:30 a.m. and 1:45 p.m.  The EMS unit responded immediately, but upon arriving, confirmed that Jennifer was already dead.  Based on signs of rigor mortis, the EMS report estimated the time of death at 9:30 to 10:30 p.m. on the previous evening.[2]  The EMS noted a history (provided by "family member") of "MA and extasty (sic)" (Id.).

An autopsy was performed, which revealed that the cause of death was

_____

[2]The death certificate and supplementary medical certification list the date of death as December 17, 2006, the date she was pronounced dead (doc. nos. 44-1 at 14, ¶ 3;  44-1 at 15).

"mixed drug (methadone, cocaine) intoxication" (doc. no. 44-1 at 15). The coroner's toxicology report indicated that in addition to methadone and cocaine, Jennifer also had traces of other drugs in her body (doc. no. 77-5 at 9-13 "Coroner's Report"). The police conducted a death investigation, but apparently considered the death to be an accidental overdose and did not pursue any criminal charges.

After Jennifer's death, William and Patricia Tierney (the "Tierneys") filed an action in the Indiana court for grandparent visitation of L.S. (see doc. no. 16 at 5).[3] On December 12, 2008, the Tierneys also filed a wrongful death suit against David Shellberg, claiming that he had visited Jennifer in Ohio on the evening of December 16, 2006, and delivered marijuana and "other drugs" to her "in order to cause" her death (doc. no. 1, ¶¶ 21-23). They also allege that defendant was negligent for "failing to help the Decedent upon her overdosing on the dangerous illegal drugs" (¶ 23).[4] In their complaint, plaintiffs assert causes of action for wrongful death, intentional infliction of emotional distress, and a survival action on behalf of Jennifer Tierney's estate pursuant to Ohio R.C. § 2305.21. The Tierneys also assert a claim

---

[3]Ronald Lunkenheimer, represented by the Tierneys' counsel, also filed a slander lawsuit against David Shellberg for allegedly saying that he was a drug dealer and child molester. Defendant contends that the lawsuit was dismissed after he pointed out that Lunkenheimer did sell illegal drugs and that Jennifer and her brother had been taken by Ohio protective services, after which the Tierneys adopted Jennifer at age four. Plaintiffs' counsel deposed David Shellberg in the slander lawsuit, but the transcript reflects that counsel primarily inquired about the circumstances of Jennifer's death, rather than any unflattering statements about Lunkenheimer (doc. no. 58).

[4]The Complaint contains paragraphs 23 and 24, followed by another set of paragraphs numbered as 23 and 24. Here, the Court is referring to the first set.

Page 4 of  24

as "guardian to be appointed" on behalf of the minor child "L.S." for loss of companionship, although at the time of filing, they had not been appointed as guardians.   Plaintiffs seek damages, including one million dollars in punitive damages (doc. no. 7 at 5).

The complaint indicates that L.S. and defendant are both residents of Indiana, while the Tierneys are residents of Ohio.  On October 18, 2010, this Court ordered plaintiffs to show cause why this action should not be dismissed for lack of diversity (doc. no. 87). Plaintiffs acknowledged that the Indiana court had not appointed them as guardians of L.S., and thus, they had no authority to bring a claim as guardians of the minor child.  This Court granted the motion to dismiss L.S. as a party (doc. no. 98 "Order").  Based on the parties properly before the Court, this Court determined that it had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a), as plaintiffs and defendant are citizens of different states, and the amount in controversy exceeds $75,000 in alleged damages.

The defendant (proceeding pro se) filed an answer to the complaint, asserting that the plaintiffs' complaint was frivolous and had been filed for purposes of harassment, that Jennifer's death was an accidental overdose, that he was not considered a suspect in the police investigation of her death, and that he had several credible witnesses as to his whereabouts on the evening of December 16, 2006 (doc. no. 5).  He also filed a motion to dismiss for lack of  personal jurisdiction because he had not had any significant contacts with Ohio for the last five years (doc. no. 10 at 2, ¶ 7).  Ohio law provides for personal jurisdiction when a cause of action arises

from the person's "causing tortious injury by an act or omission in this state." Ohio R.C. § 2307.382(A)(3). The complaint alleged that defendant had provided illegal drugs that caused the death of Jennifer Tierney in Ohio.  This Court adopted the Magistrate Judge's recommendation (doc. no. 22) that personal jurisdiction over the Indiana defendant was proper (doc. no. 26 "Order").

After extensive discovery and related motions (see doc. nos. 13-21, 24, 28, 32-34, 38-43, 45-73, 81-83), the parties filed cross-motions for summary judgment (doc. nos. 44, 77), as well as responses, replies, and numerous exhibits (doc. nos. 74, 78, 82, 85).   After considering the parties' respective motions for summary judgment, the Magistrate Judge entered a Report and Recommendation (doc. no. 99) discussing various evidentiary issues and recommending that the defendant was entitled to summary judgment.  Plaintiffs objected (doc. no. 102), and defendant responded (doc. no. 103).  This matter is fully briefed and ripe for review.

## II.  Objections Presented

Plaintiffs object on three grounds: 1) "the Magistrate erred in finding no genuine issue of material fact exists as to defendant's location on December 16, 2006 and in failing to strike [the] affidavit[s] of Laura Shellberg and Marge Shellberg" (doc. no. 102 at 2); 2) the Magistrate erred in finding "all Affidavits submitted contained hearsay on (sic) which the Court may not consider in deciding summary judgment" (doc. no. 102 at 7); and 3) "the Magistrate erred by failing to consider the deposition testimony of Chris Shellberg" (doc. no. 102 at 5).

## III.  Analysis

## A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Amended Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).

Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986).  The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.  Id. at 587.   In reviewing a motion for summary judgment, a court must determine whether the evidence presents genuine disputes of material fact for trial or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991) (emphasizing that the court must evaluate each party's motion on its own merits). When reviewing cross-motions, the Court must "draw all reasonable inferences

against the party whose motion is under consideration." **Id.**

**B.  Whether a genuine dispute of material fact exists as to David Shellberg's location on December 16, 2006;  whether the affidavits of Laura Shellberg and Marge Shellberg should have been stricken**

Plaintiffs' theory of the case is that David Shellberg drove to the Cincinnati apartment of Jennifer Tierney on the evening of December 16, 2006, and gave her illegal drugs.  According to plaintiffs' theory, Jennifer consumed those drugs and died that evening from an overdose.  Plaintiffs contend that the defendant was negligent in failing to help her after she overdosed.  However, despite ample time to investigate the facts and conduct discovery, most of the "evidence" put forth by the plaintiffs consists of innuendo, impermissible hearsay, or unreasonable compound inferences not adequately supported by actual facts.  As the Magistrate Judge observed, much of the purported "evidence" pointed to by plaintiffs has little or no relevance to the causes of action or is otherwise not admissible (doc. no. 99 at 8).

In the Report and Recommendation, the Magistrate Judge aptly pointed out that one essential material fact regarding the plaintiffs' cause of action for wrongful death is whether defendant was actually in Ohio on the evening of December 16, 2006.  Defendant filed for summary judgment and asserted that he was not in Ohio that evening.  In support of his motion, he filed the affidavits of Marjorie Shellberg (his mother) and Laura Shellberg (his wife), both indicating that the Shellberg family (including defendant and four children) had gone Christmas caroling in their Indiana neighborhood on the evening of December 16, 2006 (doc. no. 44-1 at 1-4).

Plaintiffs argue that the Court should strike these affidavits in their entirety due to purported "bad faith." In her affidavit, Marge Shellberg indicates she went caroling with her family (including defendant) after returning home from work at 9:45 p.m. that evening (doc. no. 44-1 at 1). Plaintiffs complain that the defendant has not verified that Marge worked that night. However, this falls quite short of showing that Marge made her affidavit in "bad faith." Plaintiffs point to the affidavit of their private investigator attesting that computer records showed that someone had logged onto Marge's path on the household computer at 6:36 p.m. on the evening of December 16, 2006 (doc. no. 77 at 11). Defendant responds that various people were able to use the household computer and could have logged on this way (doc. no. 82 at 4). Plaintiffs have not shown sufficient reason to strike Marge Shellberg's affidavit, and in any event, the issue of whether Marge was working that night is not the material fact at issue here.

With respect to Laura Shellberg, plaintiffs point to a discrepancy between her deposition and her later affidavit. At her deposition on November 5, 2009, she was asked what time the family went caroling that night. She responded "I think it was around 7:00 p.m." (doc. no. 51 at 17-18). Given that the caroling reportedly occurred several years earlier, some uncertainty as to the time would not be surprising. She testified that they went to several houses caroling and that David returned to their house with them and remained there for the rest of that evening (Id. at 21). In her affidavit on February 12, 2010, she indicated that they had visited several neighbors to carol and deliver gift baskets at approximately 10:00 p.m., and then returned home

(doc. no. 44-1 at 3).  This variation in the time does not provide grounds to strike her affidavit for "bad faith" pursuant to Fed.R.Civ.P. 56(h), and plaintiffs cite no legal authority for doing so.  Plaintiffs merely assail the credibility of these defense witnesses in an effort to strike their affidavits and thereby preclude summary judgment.

However, as the Magistrate Judge explained, the affidavits of Marge and Laura Shellberg are admissible and both place the defendant in Indiana on the evening of December 16, 2006, between the hours of 7:00 and 10:00 p.m.  It is not disputed that Jennifer lived approximately 100 miles away (doc. no. 78-1 at 3-6), and plaintiffs acknowledge that it would take "approximately two hours to travel from Noblesville, Indiana, the defendant's residence to Jennifer Tierney's apartment" (doc. no. 77 at 19).  Thus, any discrepancies regarding the precise time of caroling would not create a genuine dispute of material fact as to the defendant's location that evening.  "[O]nly disputed material facts, those that might affect the outcome of the suit under the governing law, will defeat summary disposition." Wedgewood Ltd. Partnership v. Township Of Liberty, Ohio, 610 F.3d 340, 349 (6th Cir. 2010), *certiorari denied*, 131 S.Ct. 1007 (2011) (quoting Anderson, 477 U.S. 242, 248 (1986)).

Plaintiffs appear to argue that summary judgment for the defendant is precluded due to the discrepancy in Laura Shellberg's affidavit and deposition as to the exact time of caroling.  Plaintiffs contend that "this is crucial to plaintiffs' assertion that Defendant Shellberg was with the decedent, Jennifer Tierney, on the evening of her death" (doc. no. 102 at 3).  Plaintiffs' argument misses the mark.

Although a party cannot create a factual issue (and thereby survive summary judgment) by filing an affidavit which contradicts that party's prior testimony, see Lanier v. Bryant, 332 F.3d 999, 1003 (6th Cir. 2003); Hughes v. Vanderbilt Univ., 215 F.3d 543, 549 (6th Cir. 2000), the defendant is certainly not attempting to create a factual dispute as to his own motion.  As already noted, both the deposition testimony of Laura Shellberg and the two affidavits (of Laura and Marge Shellberg) indicate that the defendant was in Indiana on the evening of December 16, 2006.

Although plaintiffs are attempting to prevent summary judgment for the defendant, plaintiffs cannot rely on a minor timing discrepancy in the defense affidavits to create a genuine dispute of material fact as to the defendant's whereabouts on December 16, 2006.  As the Magistrate Judge explained in detail, the plaintiffs have not pointed to any admissible evidence showing that the defendant was actually in Ohio visiting Jennifer that evening.  The Magistrate Judge explained that "whether or not plaintiffs have shown an issue of fact regarding defendant's presence in Indiana, they have not shown defendant was physically present in Ohio . . . " (doc. no. 99 at 13).

In order to show a genuine dispute of material fact as to whether the defendant proximately caused Jennifer's death, plaintiffs must point to some competent, credible evidence that the defendant actually traveled to Ohio and gave Jennifer illegal drugs which probably killed her.  See Roberts v. Ohio Permanente Med. Group, Inc., 76 Ohio St.3d 483, 485 (1996); Miller v. Paulson, 97 Ohio App.3d 217, 222 (1994) (defining the term "probably" as meaning "more likely than not").

Plaintiffs have not pointed to any admissible evidence that plaintiff was actually in Ohio on the date in question, much less any admissible evidence that he gave her the illegal drugs that killed her.  Moreover, the evidence indicates that Jennifer had a history of serious drug abuse, as evidenced by the deposition testimony and the results of the drug screen performed  in connection with the custody proceeding at which Jennifer had passed out after taking too much Xanax (doc. no. 44-1 at 8, ¶ 15 noting that Jennifer had a "strong tendency for addiction proneness").

In an effort to show that the defendant was in Ohio visiting Jennifer on the evening at issue, plaintiffs point to the defendant's cell phone records, which reflect that defendant did not receive or make any phone calls after 4:47 p.m. on the evening of December 16, 2006 (doc. no. 77 at 18, citing doc. no. 48, Ex. 4DS).  Plaintiffs speculate as to why defendant received no calls and suggest that the defendant must have turned off his phone when driving to Ohio to deliver drugs to Jennifer (doc. nos. 85 at 5).  See, e.g., Marthel v. Bridgestone/Firestone, Inc., 926 F.Supp. 1293, 1300 (M.D. Tenn. 1996)("a plaintiff's personal beliefs, conjecture and speculation as to the defendant's motivation are not competent evidence to withstand summary judgment").

The absence of calls is not proof of anything except the absence of calls.  The attenuated inferences suggested by plaintiffs, no matter how sincerely believed by plaintiffs, are not reasonable, and the absence of phone calls is not probative of whether the defendant went to Ohio on December 16, 2006.  A party cannot "create a genuine issue of material fact through mere speculation or the building of one

inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). The phone records merely demonstrate that defendant received no calls and made no calls that particular evening. Defendant points out that his employer (Anderson Homes) required him to keep his cell phone turned on 24 hours (doc. no. 82 at 4).

Although the Court is required to view the evidence and draw all "reasonable" inferences in favor of the nonmoving party, see Matsushita, 475 U.S. at 587, the plaintiffs are demanding multiple inferences that require enormous leaps of logic that are not reasonable. To the extent the absence of calls could be deemed minimally probative, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; Ciminillo v. Streicher, 434 F.3d 461, 464 (6th Cir. 2006). If a defendant shows, after a reasonable discovery period, that the plaintiff cannot produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of the case, summary judgment is appropriate. Celotex, 477 U.S. at 325.

C. Whether the "Magistrate erred in finding all Affidavits submitted contained hearsay on (sic) which the Court may not consider in deciding summary judgment"[5]

Hearsay is defined as an unsworn, out-of-court statement offered in evidence for the truth of the matter asserted. Fed.R.Evid. 801. Hearsay is generally not admissible in evidence. Fed. R. Evid. 802. An affidavit filed in opposition to a motion

---

[5]Although the heading refers to "all" affidavits, the plaintiffs' objection specifically discusses only the affidavits of the Tierneys and Kris Riley.

for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of fact. Sperle v. Michigan Dept. of Corrections, 297 F.3d 483, 495 (6th Cir. 2002) (finding affidavit insufficient to create genuine issue of fact where it was not based on personal knowledge); Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (affidavit was improper where it was not made on personal knowledge and did not set forth facts that would be admissible into evidence).

In their own motion and in their response to the defendant's motion, the plaintiffs discussed hearsay evidence but did not put forth any basis for consideration of it.  The Magistrate Judge addressed the admissibility of the plaintiffs' hearsay evidence at length and correctly pointed out that the Court may only consider admissible evidence when ruling on a motion for summary judgment. Wiley v. United States, 20 F.3d 222, 226 (6th Cir.1994).  Hearsay evidence may not be considered on a motion for summary judgment.  Id. (citing Daily Press, Inc. v. United Press Int'l, 412 F.2d 126, 133 (6th Cir. 1969));  Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996).  The proffered evidence need not be in admissible form, but the content must be admissible.  Celotex Corp., 477 U.S. at 324;  Bailey v. Floyd Cty. Bd. of Educ., 106 F.3d 135, 145 (6th Cir. 1997). The party opposing summary judgment must show that they "can make good on the promise of the pleadings by laying out

enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." Alexander, 576 F.3d at 558. Plaintiffs have not done so.

Plaintiffs object that the Magistrate Judge improperly "discounted the affidavits of the decedent's parents as containing hearsay and/or inadmissible/irrelevant evidence" (doc. no. 102 at 9). In their affidavits, the Tierneys both state that Jennifer told them that David had told her that he was going to visit her on December 16, 2006. They also state that Jennifer told them that "David could kill me." Plaintiffs are attempting to use these unsworn, out-of-court statements as evidence for the truth of the matter asserted, i.e that David Shellberg visited Jennifer on December 16, 2006 and that he "killed" her (doc. nos. 77 at 13; 74 at 7).

Plaintiffs also complain that the Magistrate Judge "ignored" the affidavit of Kris Riley (doc. no. 102 at 10). Kris Riley's affidavit describes two incidents (on October 7 and November 7, 2006) where Jennifer stayed at Riley's house for several days while sick from the effects of illegal drugs. Riley states that, on both occasions, Jennifer told her that David had visited her and given her drugs that made her very ill. Plaintiffs are attempting to use these unsworn, out-of-court statements as evidence for the truth of the matter asserted, i.e. that the defendant had visited Jennifer and provided her with drugs on those dates, and therefore, must have done so on December 16, 2006 (doc. no. 77 at 8). Plaintiffs contend that the defendant tried to kill Jennifer on those dates and then "succeeded" on December 16, 2006. The Magistrate Judge did not "ignore" this hearsay evidence regarding

prior events. The Magistrate Judge's extensive discussion of the law applicable to hearsay pertained to all the hearsay evidence, including this affidavit.

In their objections, plaintiffs for the first time attempt to justify the use of hearsay statements in the affidavits of the Tierneys and Kris Riley.  Plaintiffs generally cite Rules 803 and 804 of the Federal Rules of Evidence, and urge that the hearsay statements are admissible under the exceptions for "present sense impressions" or "excited utterances" (doc. no. 102 at 11).  Plaintiffs did not argue this in their motion so that the Magistrate Judge could address these arguments, although the Magistrate Judge's thorough analysis did address the issue.

Rule 803 of the Federal Rules of Evidence provides in relevant part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
> (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Fed.R.Evid. 803(1-2).

Plaintiffs cite Greene v. B.F. Goodrich Avionics Systems, Inc., 409 F.3d 784, (6th Cir. 2005), cert. denied, 547 U.S. 1003 (2006) in support of their contention that Jennifer's statements to her parents and to Kris Riley were "present sense impressions" or "excited utterances."  In Greene, the Court of Appeals for the Sixth Circuit held that a helicopter pilot's statement recorded on the cockpit voice recorder prior to the fatal crash, "okay I think my gyro just quit," was admissible in a products

liability action brought by the pilot's wife under the present sense impression exception to the hearsay rule.  Nothing in the circumstances surrounding Jennifer's alleged statements to her parents about her telephone conversation is remotely similar.  The Magistrate Judge observed that "none of the decedent's statements were sufficiently contemporaneous with any known observations by the decedent to meet the requirements of Rule 803(1), Fed.R.Evid."(doc. no. 99 at 8, fn. 5). Similarly, Jennifer's statements to Kris Riley were not contemporaneous with the defendant's alleged visit and occurred hours after she had taken illegal drugs allegedly provided by the defendant earlier that evening.

For the excited utterance exception under Fed.R.Evid. 803(2) to apply, "[f]irst, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of the excitement caused by the event." Haggins v. Warden, Fort Pillow State Farm, 715 F.2d 1050, 1057 (6th Cir.1983), *cert. denied*, 464 U.S. 1071 (1984).  Nothing of record suggests that Jennifer's phone call and subsequent conversation with her parents would constitute a "startling" event or otherwise meet these criteria.  With respect to her statements to Kris Riley, plaintiffs merely contend that Jennifer made those statements "immediately after the event(s) occurred" and "while still under the stress and fear of the situation that had occurred" (doc. no. 102 at 12). As already noted, Jennifer allegedly made the statements to Kris Riley hours after her visit with David.

In their objections, plaintiffs further contend that under Fed. Evid. R. 804(a)(4), "hearsay is allowed by a witness because of the death of a witness" (doc. no. 102 at 7).  The part of the rule cited by plaintiffs governs when a witness is "unavailable." The next part, Rule 804(b), provides that "[t]he following are not excluded by the hearsay rule if the declarant is unavailable as a witness: Former testimony. . . Statement under belief of impending death. . . Statement against interest . . . Statement of personal or family history . . .[and] Forfeiture by wrongdoing." Fed.Evid.R. 804(b)(1-6).  Although plaintiffs did not raise this issue in their motion, the Magistrate Judge discussed possible hearsay exceptions and ruled out their applicability (doc. no. 99 at 8, fn. 5).  The exceptions cited by plaintiffs in their objections do not render the hearsay statements in the affidavits admissible.

Plaintiffs also point to the state evidentiary rules, specifically Ohio Evid. Rule 601, which governs the competency of a witness.  In a federal case based on diversity, the competency of witnesses is determined by state law.  The Federal Rules of Evidence generally govern the admissibility of evidence, except in certain areas such as the privilege of witnesses or the competency of a witness.  Plaintiffs then assert that Ohio Evid. Rule 804(B)(5) allows the decedent to "speak from the grave" through them. Ohio Evid. Rule 804(B)(5) provides that a hearsay statement of a deceased person is not excluded by the hearsay rule where (1) the estate or personal representative of the estate is a party, (2) the statement was made before the death, and (3) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent.

Plaintiffs cite <u>Ament v. Reassure Am. Life Ins. Co.</u>, 180 Ohio App.3d 440 (Ohio App. 8 Dist. 2009) in support, although that case found that Rule 804 did not apply. There, the deceased wife's statement to her insurance agent was deemed admissible under the Rule 803 hearsay exception for statements of a declarant's then-existing state of mind, to show her reason for naming her sister as beneficiary on a policy. Even if Rule 601 governs competency of witnesses, their statements must still be admissible. Plaintiffs do not explain why the state evidentiary rule (i.e. Ohio Evid. R. 804(B)(5)) would apply.

Finally, although plaintiffs did not put forth any relevant basis for admission of Jennifer's diary, the Court has also carefully considered whether any hearsay evidence in the diary could be admissible under Rule 803(3) and the <u>Hillmon</u> exception. Fed. Evid. Rule 803(3) provides that the following is not excluded by the hearsay rule, even though the declarant is available as a witness:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

This codified exception has its origins in <u>Mutual Life Ins. Co. v. Hillmon</u>, 145 U.S. 285 (1892), where the United States Supreme Court first recognized a limited "state-of-mind" exception to the rule against hearsay. That case involved a businessman (Walters) who had written two letters to family members indicating his plan to travel with a business partner (Hillmon) to look at property at a particular

place.  The two men subsequently disappeared, and one body was recovered at that place. Hillmon's widow sought to recover life insurance proceeds, but the insurance company refused to pay, alleging that Walters (rather than Hillmon) had died.  The Court ultimately found that Walter's letters could be admitted because, under the circumstances, the letters were sufficiently reliable "as showing his intentions, and as tending to corroborate the evidence that it was his body that was found" (<u>Id</u>. at 295).  The Court reasoned that the letters corroborated other evidence already admitted, and tended to show that Walters went to Crooked Creek with Hillmon. (<u>Id</u>.). The Court explained that the letters were written by Walters "under circumstances precluding a suspicion of misrepresentation." In <u>Hillmon</u>, the deceased person's own written letters to his family members  about his own travel plans were deemed sufficiently reliable to be admitted.

Here,  the present plaintiffs seek to rely on an entry in the decedent's diary to the effect that a third party – David – had said he was going to visit her.  The diary was prepared in the context of a bitter custody dispute.  In <u>Coy v. Renico</u>, 414 F.Supp.2d 744 (E.D. Mich. 2006), the Court engaged in a lengthy  examination of a "further sub-set" of this exception, namely, state-of-mind evidence used to prove the future conduct, not of the declarant, but of a third party.  In <u>Coy</u>, the Court observed that, after Congress codified the Federal Rules of Evidence in 1975, the report of the House Judiciary Committee indicated that it intended Rule 803(3) to "be construed to limit the doctrine of ... <u>Hillmon</u>, so as to render statements of intent by a declarant admissible only to prove his future conduct, not the future conduct of another

person." Id. at 768 (quoting H.R. Rep. No. 93-650, at 13-14 (1973), reprinted in 1974 U.S.C.C.A.N. 7051, 7075, 7087).

Ultimately, the issue regarding the entry in the diary about David's call and anticipated visit is not determinative on summary judgment. Even supposing that the notation (about David coming to visit Jennifer) in the diary were admissible, it would indicate that Jennifer believed David was going to come visit her. However, plaintiffs seek to rely on it to prove that he actually did so. Even supposing David had expressed his intent to visit her when he allegedly made such statement, which he denies under oath, other admissible eye-witness evidence places him in Indiana on the relevant date. This creates a permissible inference that he did not follow through with any such future plan, and instead, went caroling in Indiana with his family that evening.

To the extent plaintiffs also seek to rely on affidavits containing multiple layers of hearsay regarding the alleged future plans of a third party (i.e. defendant David Shellberg) to prove that the defendant actually brought drugs to Jennifer on December 16, 2006 which killed her, this hearsay is beyond the outer limits of the Hillmon exception.[6] Such inadmissible statements may not be considered on summary judgment, and the diary entry by itself is insufficient to create a genuine

_____

[6]For affidavits indicating that David allegedly told Jennifer who then told a friend or relative, see Affidavit of Heather Needs (doc. no. 77-9 at ¶ 10); Ronald Lunkenheimer (doc. no. 77-10 at ¶¶ 5, 10); William Tierney (doc. no. 77-6 ¶ 25); and Patricia Tierney (doc. no. 77-7 at ¶ 25). For an affidavit indicating a further layer of hearsay, see Affidavit of Kris Riley (doc. no. 77-4 at ¶ 24), where she states that Ronald Lunkenheimer told her that Jennifer told him that David told her he was coming to see Jennifer on Dec 16, 2006.

issue of material fact.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." <u>Id</u>. at 249–50.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " <u>Matsushita</u>, 475 U.S. at 587.

**D.  Whether "the Magistrate erred by failing to consider the deposition testimony of Chris Shellberg"**

Plaintiffs complain that the Magistrate Judge did not consider the deposition testimony of the defendant's half-brother, Chris Shellberg (doc. no. 102 at 5). Plaintiffs merely restate much of their previous argument from their motion (doc. no. 77 at 16).  The gist of their argument is that Chris testified at deposition that David had called him and told him "someone had died last night" (doc. no. 102 at 6, citing doc. no. 55, Dep. at 21-23).  Chris indicated he thought it was on December 17 or 18, 2006, but acknowledged that "it was a long time ago, so I don't have a clear memory."  Plaintiffs then launch into extended speculation to the effect that "if David Shellberg was not with Jennifer Tierney the evening of her death on December 16, 2006, he would have no way of knowing about Jennifer's death" (doc. no. 102 at 6). They argue that Jennifer's obituary was published three days after her death, and thus according to plaintiffs, defendant could not have known about her death unless he was there when she died.

Plaintiffs contend that the Magistrate Judge should have considered this testimony because, according to plaintiffs, it creates a genuine dispute of material fact (doc. no. 102 at 7).  On the contrary, plaintiffs make far too much of this vague deposition testimony, much of which was elicited upon leading questions.  Chris Shellberg indicated that the phone call was "a long time ago" (doc. no. 55, Dep. at 21).  Similarly, when asked about the defendant's relationship with Jennifer, Chris responded "It's been some years ago, so it's kind of vague" (doc. no. 55, Dep. at 18).

Plaintiffs conveniently ignore the fact that defendant has pointed out that his phone records show that he actually called Chris on December 23, 2006, a full week after Jennifer's death (doc. no. 78 at 4). The Tierneys acknowledge that David Shellberg spoke with them by telephone on December 22, 2006 (doc. no. 77 at 15-16, citing doc. no. 48, Ex. 5DS "phone records").  Thus, defendant knew of Jennifer's death from the Tierneys when he spoke with Chris on December 23, 2006.  Plaintiffs' speculation that Chris Shellberg's testimony shows that his brother David had "guilty knowledge" of Jennifer's death on December 17 or 18, 2006, simply does not hold up under scrutiny.  Additionally, Chris Shellberg testified that he had not spoken to David for several years, that he and David had used only marijuana together on several occasions in the past, and that he had no knowledge of David using any other drugs (doc. no. 55, Dep. at 11-12, 18).

Contrary to plaintiffs' argument, "[t]he mere existence of a scintilla of evidence in support of the [opponent's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opponent]." Anderson, 477

Page 23 of  24

U.S. at 252;  Moldowan v. City of Warren, 578 F.3d 351, 374 (6th Cir. 2009).

## IV. Conclusion

The plaintiffs' case is built largely on speculation and inadmissible hearsay evidence.  The majority of the statements in the affidavits relied on by plaintiffs – the crux of their case – are inadmissible hearsay that the Court must disregard at the summary judgment stage.  In the Report and Recommendation, the Magistrate Judge set forth the elements for each cause of action and discussed at length how the admissible evidence of record failed to establish genuine disputes of material fact regarding those elements.  In short, the defendant is entitled to summary judgment.

## V. Oral Argument Not Warranted

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument.  The Court finds that based on the pleadings and exhibits before the Court, oral argument is not warranted.

Accordingly, the defendant's motion for summary judgment (doc. no. 44) is GRANTED; the plaintiffs' motion for summary judgment (doc. no. 77) is DENIED; this case is DISMISSED at plaintiffs' cost and TERMINATED on the docket of this Court.

IT IS SO ORDERED.

                                              <u>s/Herman J. Weber</u>
                                         Herman J. Weber, Senior Judge
                                         United States District Court